**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-06-445 |
| | § | C.A. No. C-07-333 |
| ABELARDO GONZALEZ, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE
AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Abelardo Gonzalez's ("Gonzalez") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 43),[1] which was received by the Clerk on August 7, 2007. The Court ordered the government to respond (D.E. 44), and the government filed a motion for summary judgment and alternative response and motion to dismiss on October 2, 2007. (D.E. 50.) Gonzalez had until November 5, 2007 to file a reply (D.E. 47); to date, no reply has been received from Gonzalez. For the reasons set forth herein, the Court DENIES Gonzalez's § 2255 motion. Additionally, the Court DENIES Gonzalez a Certificate of Appealability.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

[1] Docket entry references are to the criminal case, Cr. C-06-445.

## II. FACTS AND PROCEEDINGS

### A. Summary of the Offense[2]

Gonzalez was the driver of a 2002 Isuzu truck pulling a utility trailer that entered the Falfurrias, Texas U.S. Border Patrol checkpoint on June 2, 2006. During the immigration inspection, the service canine alerted to the trailer. In the secondary inspection area, Gonzalez stepped out of the Isuzu truck and proceeded to the rear trailer to unlock and open the door. Gonzalez opened one door of the trailer and stated that there was only candy in the trailer and attempted to close the door. Upon opening an unlocked side door on the trailer, the agent observed several pinatas and two individuals lying on the floor in the middle of the trailer. A further search revealed a total of seven undocumented aliens from El Salvador.

The agent noticed that the undocumented aliens were sweating. Although the utility trailer had a small pop-up vent, which was open, the back door to the trailer was locked with a padlock and the side door could not be opened from the inside of the trailer.

Gonzalez told agents that an unknown female had contacted him two weeks prior and offered to pay him $1,500.00 for each alien he would smuggle for her. She contacted him again on June 6, 2006, at which time Gonzalez agreed to transport the aliens. He was instructed to leave the trailer unattended in the loading area of "La Michoacana" store in Pharr, Texas. An unknown individual loaded the trailer while Gonzalez was in the store. Gonzalez stated that he knew there were aliens in the trailer, but did not know how many. His instructions were to transport the aliens to San Antonio, Texas. He was to be paid in Houston, Texas, once he returned.

Two of the undocumented aliens served as material witnesses. In sworn statements, they

---

[2] Information in this section is derived from Gonzalez's Presentence Investigation Report ("PSR") at ¶¶ 4-7.

stated that they entered the United States on June 2, 2006 by swimming across the Rio Grande River near Reynosa, Mexico. One agreed to pay $6,000 to be smuggled to Virginia and had paid $3,000 of that total amount in El Salvador. The other stated that he paid $4,000 in El Salvador and was to pay the remaining $2,000 once he arrived in Houston. Both were taken to a house where they stayed with the other five undocumented aliens for approximately four days. They were then taken to an alley where they were told to get into a trailer. They were apparently in the trailer for approximately two hours before their apprehension at the checkpoint.

**B. Criminal Proceedings**

On June 22, 2006, Gonzalez was charged with two counts of transporting an illegal alien, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(B)(ii). (D.E. 14.) On July 31, 2006, Gonzalez pleaded guilty to Count One of the indictment, pursuant to a written plea agreement. (D.E. 27; see also Minute Entry dated 7/31/2006.) In exchange for his guilty plea to Count One and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that he receive the maximum credit for acceptance of responsibility, to recommend a sentence at the lowest end of the guideline range, and to move for the dismissal of the remaining count at sentencing. (D.E. 27 at ¶¶ 1-2, 7.)

The plea agreement contained a waiver of Gonzalez's right to appeal and to file a § 2255 motion:

> Defendant waives his/her right to appeal both the conviction and the sentence imposed. Defendant is aware that Title 18 U.S.C. §3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that Title 28, U.S.C. §2255, affords the right to contest or "collaterally attack" a conviction or

> sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 27 at ¶ 7 (emphasis in original).)

The Court sentenced Gonzalez on October 19, 2006. Prior to sentencing, Gonzalez's counsel filed written objections to the PSR. (D.E. 29.) Specifically, counsel objected to a three-level increase imposed by the PSR for alleged creation of a substantial risk of death or serious bodily injury to the aliens. (D.E. 29, D.E. 33.) At sentencing, Gonzalez's counsel again raised this objection, but the Court overruled it. (D.E. 49, Sentencing Transcript ("S. Tr.") at 3-6.) The Court sentenced Gonzalez to 18 months in the custody of the Bureau of Prisons, to be followed by a three-year term of supervised release, and imposed a $100 special assessment. (D.E. 36; S. Tr. at 8-9.) Judgment of conviction and sentence was entered October 24, 2006. (D.E. 36.) Consistent with his waiver of appellate rights, Gonzalez did not appeal.

On June 27, 2007, a letter from Gonzalez complaining about his attorney, Mr. Zamora, was docketed by the Clerk. (D.E. 39.) Magistrate Judge B. Janice Ellington held a telephone conference with Gonzalez on July 5, 2007, in order to ascertain what relief he sought. On the same date, the Magistrate Judge entered an order giving notice to Gonzalez of the recharacterization of his letter as a § 2255 motion and giving the warnings required by Castro v. United States, 540 U.S. 375 (2003). (D.E. 41.) Gonzalez subsequently filed a § 2255 motion with the Court, which was received by the Clerk on August 7, 2007. (D.E. 43.) It is timely.

## III. MOVANT'S ALLEGATIONS AND GOVERNMENT'S CONTENTIONS

In his motion, Gonzalez lists five grounds for relief, although there is little supporting detail for any of his claims. First, he complains that his attorney took a fee from his family in order to represent him, despite the fact that the attorney was court appointed. (D.E. 43 at 4.) In support of

this claim, he has separately filed a letter from his mother supporting his claim of payment, as well as a copy of the cashier's check provided to his lawyer. (D.E. 43 at 17; D.E. 42.) Second, he claims that he was denied effective assistance of counsel because his attorney showed up "2 minutes before" his sentencing, and presumably he did not have sufficient time to discuss sentencing concerns with his counsel. (D.E. 43 at 4.) Third, he claims that his counsel "wanted to keep the bond money" at the conclusion of the case. (D.E. 43 at 4.) Fourth, he appears to be complaining that he did not receive any "help" from the agents based on his attempts to cooperate, which the Court construes as a complaint regarding the government's failure to move for a downward departure for substantial assistance. (D.E. 43 at 5.) Fifth and finally, he appears to be arguing that the three-level increase to his offense level for putting the undocumented aliens at risk of injury or death was improper. He points to the declarations of the material witnesses and the fact that none of them requested any medical attention at the time of his arrest. (D.E. 43 at 5.)

He requests that the Court grant the following relief: "1) get some of the money paid to my counsel back; 2) reduce of time if possible; [and] 3) A recommendation to imigration [sic] that will help me fight deportation." (D.E. 43 at 14.)

In its response, the government argues that Gonzalez's motion is barred in its entirety because of his waiver of § 2255 rights in his written plea agreement. (D.E. 50 at 5-8.) It moves for summary judgment on this ground. (Id.) The government argues, in the alternative, that Gonzalez's motion should be dismissed because the motion and record in the case show that no relief is appropriate. (D.E. 50 at 9.)

As part of its response, the government has also provided the affidavit of Gonzalez's defense counsel, Robert Zamora, and moved to expand the record to include it. The government's motion to expand the record is GRANTED and the Court has considered Zamora's affidavit. In pertinent

part, Zamora admits that he was initially appointed by the Court to represent Gonzalez, but claims that Gonzalez and his family wanted to retain him, even though he explained that he was court-appointed and would be paid by the government. They apparently insisted and retained him. Zamora further avers that there was no CJA fee application filed by him requesting payment for services provided to Gonzalez, a fact supported by the record in this case. (D.E. 50, Exh. A, Zamora Aff. at 1.)

With regard to Gonzalez's claim that he arrived only minutes before sentencing, Zamora was unsure of the time he arrived, but knew he was not late for court. (D.E. 50, Exh. A, Zamora Aff. at 1-2.) In his affidavit, Zamora also states that:

> I do recall that, prior to sentencing, I discussed the presentence investigation report fully with Mr. Gonzalez, including the possible enhancement in his offense level for reckless endangerment of the immigrants. We also fully prepared for the defense of that issue for purposes of the sentencing hearing.

(D.E. 50, Exh. A, Zamora Aff. at 2.)

Finally, Zamora claims that it was discussed between him and Gonzalez's family that the bond money could be used to post bond and also be applied to the remainder of attorneys' fees, if necessary, but avers that "[i]n the end, the bond money was returned to Mr. Gonzalez' family." (D.E. 50, Exh. A, Zamora Aff. at 2.)

For the reasons set forth herein, the Court declines to hold that Gonzalez's motion is barred by his waiver. Instead, the Court addresses his claims on the merits and determines that Gonzalez's claim does not entitle him to relief.

## IV. DISCUSSION

### A. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set

aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593 (1982).

**B. Gonzalez's Waiver of § 2255 Rights**

As noted, the government claims that Gonzalez validly waived his right to file any § 2255 motion. It is true that his written plea agreement contained a waiver of § 2255 rights, which was in the same paragraph as his waiver of appellate rights. (D.E. 27 at ¶ 7.) While the transcript of the rearraignment certainly supports the conclusion that Gonzalez's plea and his waiver were knowing and voluntary, he was not specifically questioned by the Court about his § 2255 wavier, but only about his waiver of appellate rights. (See, e.g., D.E. 48, Rearraignment Transcript ("R. Tr.") at 17-18). Cf. Fed. R. Crim. P. 11(b)(1)(N) (requiring the Court to "inform the defendant of, and determine that the defendant understands, ... the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.").

In light of the fact that there was a lack of technical compliance with Rule 11(e)(1)(N) in this case as to Gonzalez's waiver of § 2255 rights, the Court will address his claims on their merits, rather than dismissing them on the basis of the waiver.[3]

[3] The Court makes no ruling herein on the enforceability of Gonzalez's § 2255 waiver.

## C. Ineffective Assistance of Counsel Claims

Gonzalez's first, second and third claims are all ineffective assistance of counsel claims. Such claims are properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### 1. Claim That Counsel, Who Was Court-Appointed, Took a Fee From Gonzalez's Family

It is undisputed that Zamora was court-appointed to represent Gonzalez, and also undisputed that he received a fee from Gonzalez's family. The affidavit from Gonzalez's mother further confirms the amount paid to Zamora, $6,500.[4] Zamora was not "double-paid," however, because he did not submit a request for payment to the Court. The only real factual dispute on this issue concerns whether Zamora required the family to pay a fee, as Gonzalez suggests, or they offered to retain him, as Zamora avers.

The irregular way in which the fee was paid to a CJA-appointed counsel concerns this Court.

[4] The government makes no mention of the affidavit filed with the Court, instead accusing Gonzalez of failing to supplement his ground with required additional details. (See D.E. 50 at 14-15.)

In particular, it appears to be prohibited by 18 U.S.C. § 3006A(f). That provision provides:

> (f) **Receipt of other payments. –** Whenever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney . . . or to the court for deposit in the Treasury . . . . ***Except as so authorized or directed, no such person or organization may request or accept any payment or promise of payment for representing a defendant.***

18 U.S.C. § 3006A(f). Even accepting Zamora's version of events (in which Gonzalez's family insisted they wanted to retain him), the foregoing directs that Zamora should not have accepted payment without notifying and receiving authorization from the Court, which he did not do.

Despite these irregularities, however, Zamora's conduct in this case does not give rise to an ineffective assistance claim. While it may have been unethical or improper for Zamora to accept the fee, Gonzalez has not alleged or shown that the circumstances surrounding the fee affected Zamora's representation of him or violated his constitutional right to counsel. Nor has Gonzalez shown that the result of his criminal proceedings would have been different, if Zamora had not accepted payment from his family. Having failed to show deficiency and prejudice, the payment of the fee is not a ground for relief under § 2255. Thus, this claim is DENIED. Of course, Gonzalez is free to pursue other remedies against Zamora as a result of his acceptance of the fee.

**2. Claim That Counsel Appeared for Sentencing at the Last Minute**

Gonzalez's claim that his counsel appeared for sentencing only a few minutes before sentencing began also fails because Gonzalez cannot show prejudice. That is, he has not alleged or shown how the outcome of his proceedings would have been different, or what counsel could have done differently at sentencing, had he arrived earlier.

### 3. Claim That Counsel "Wanted to Keep Bond Money" At the Conclusion of the Case

The claim that counsel "wanted" to keep Gonzalez's bond money also fails. Notably, Gonzalez never alleges that counsel ***actually*** kept the bond money, and the sworn affidavit of Zamora indicates that the money was returned. No contrary evidence has been provided by Gonzalez. Thus, Gonzalez has failed to show deficiency. Additionally, like his claim concerning the payment of a fee to Zamora, this claim also fails because Gonzalez cannot show prejudice. No connection has been alleged or shown between the possible retention of Gonzalez's bond money and the outcome in his criminal proceedings. Thus, this claim is not a proper claim for relief in a § 2255 proceeding and it fails.

## D. Claim That He Should Have Been Given Downward Departure for Substantial Assistance

Gonzalez's fourth claim is that he should have been given a downward departure for substantial assistance. To the extent he's challenging the Court's application of the sentencing guidelines, this claim is not properly before the Court. United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999) (claims that the sentencing guidelines were misapplied are not cognizable in § 2255 motion). Additionally, Gonzalez has failed to set forth any details or facts in support of his conclusory claim. It fails for this reason, as well. United States v. Pineda, 988 F.2d 22, 23 (5th Cir. 1993) ("Mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.") (citation omitted).

To the extent that Gonzalez is arguing that the government should have filed a motion to reduce his sentence, he has not shown that he is entitled to relief. Gonzalez's written plea agreement with the government makes clear that the government has "sole discretion" as to whether or not to file a motion for downward departure for substantial assistance. (D.E. 27 at ¶ 3.) Where the

government retains such discretion, the Court may only assess whether the government relied upon an unconstitutional motive in refusing to file the motion. United States v. Garcia-Bonilla, 11 F.3d 45 (5th Cir. 1993). The Court's review of the record discloses no unconstitutional motive, and Gonzalez has not alleged one. Thus, this claim fails, too.

**E. Claim That the Court Erred in Applying Enhancement for "Reckless Endangerment"**

Gonzalez's final claim appears to be that the Court erred in applying the three-level enhancement to his offense level for reckless endangerment of the aliens, pursuant to U.S.S.G. § 2L1.1(b)(5). To the extent that he is questioning the Court's application of the guidelines, his claim is not cognizable here. Williamson, 183 F.3d at 462 (claims that the sentencing guidelines were misapplied are not cognizable in § 2255 motion).

Additionally, to the extent that he is claiming his counsel was somehow ineffective for failing to prevent the enhancement from being applied, his claim is without merit. His counsel objected – both in writing and again orally at sentencing – to the enhancement and put forward arguments based on the facts of the case. The Court overruled the objections, but Gonzalez has not identified or shown anything else that his counsel should have done or could have done that would have changed the outcome of his sentencing. See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000) (in order to show prejudice as to any ***sentencing*** issues, a defendant must show that there is a reasonable probability that but for counsel's alleged errors, he would have received a lower sentence). Thus, he cannot establish prejudice and any ineffective assistance claim on this ground fails.

Because Gonzalez's claims do not entitle him to relief, Gonzalez's § 2255 motion (D.E. 43) is DENIED.

**D. Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Gonzalez has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of Gonzalez's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Accordingly, Gonzalez is not entitled to a COA as to his claims.

## V. CONCLUSION

For the above-stated reasons, Gonzalez's motion under 28 U.S.C. § 2255 (D.E. 43) is DENIED. The Court also DENIES Gonzalez a Certificate of Appealability.

It is so ORDERED.

Signed this 20th day of November, 2007.

John D. Rainey

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE